IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ANN N. JENSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION<br><br>1:14CV00137-PMW<br><br>Magistrate Judge Paul M. Warner |

Plaintiff, Anne N. Jensen, applied for disability insurance benefits from the Social Security Administration ("SSA") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34 (2012) (the "Act"). The SSA denied her application. She then filed the underlying action challenging the denial.

The parties have briefed the pertinent issues in this case, and the Court has also had the benefit of hearing oral argument from counsel for both Plaintiff and the SSA. Thus informed, and with the proper standard of review in mind,[1] the Court hereby affirms the

---

[1] The Act limits this Court to considering whether the agency's decision is "supported by substantial evidence" and free of harmful legal error. Social Security Act § 205(g), 42 U.S.C. § 405(g). Further, even where a plaintiff is able to point out error in the agency's decision, a court will still affirm that decision where the agency would have reached the same result notwithstanding its initial error. *See* Fed. R. Civ. P. 61; *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding court will not reverse agency decision where it can "confidently say that no reasonable administrative factfinder . . . could have resolved the factual matter in any other way."). The burden of proving that prejudice resulted from an agency error (i.e., that the error had a material outcome on the case) lies with the plaintiff. *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943).

SSA's decision.[2]

Plaintiff alleges disability based on various physical and mental impairments. The exact contours of her impairments are not important at this juncture, as the present dispute is unrelated to the medical evidence before the SSA or how it weighed that evidence. To understand this case, however, the Court notes the statutory definition of disability and the regulations that guide decision makers in deciding disability claims.

Under the Act, an individual is only disabled where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work, but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Social Security Act § 223(d), 42 U.S.C. § 423(d). In implementing this statutory requirement, the SSA has developed a five-step, sequential evaluation process for disability claims. Under that process, the adjudicator must consider, in order, whether a claimant (1) performed substantial gainful activity during the alleged period of disability; (2) had a "severe" impairment (as that term is defined in the regulation); (3) had a condition that met or equaled the severity of an impairment that the SSA has determined is per se disabling; (4) could perform her past relevant work in light of her residual functional capacity; and (5) could perform other work existing in significant numbers in the national economy.[3] 20 C.F.R. § 404.1520 (2015).

---

[2] Both parties consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c) (2012) and DUCivR 72-2(g).

[3] "[R]esidual functional capacity is the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 404.1545 (2015). A claimant's residual functional capacity is a factual question that is determined by the agency upon consideration of the evidence before it. *Id.* § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471, 34,472 (July 2, 1996). In determining the vocational impact of a particular residual functional capacity, however,

The dispute before the Court is rooted in Steps Four and Five of this process. The final decision in this case was issued by an administrative law judge ("ALJ"). Before issuing this decision, the ALJ held a hearing at which he heard testimony from both Plaintiff and an independent vocational expert. The ALJ asked the vocational expert several questions regarding whether a person with Plaintiff's "age, education, and vocational background," who also faced certain physical and mental limitations, could perform either Plaintiff's past work or any other jobs that existed in significant numbers in the national economy. One of those hypothetical questions eventually became the ALJ's finding regarding Plaintiff's residual functional capacity. In responding to that particular hypothetical, the expert witness replied that while such a person could not perform Plaintiff's past work, she could still perform other jobs such as marker/labeler and inspector and hand packager. For a person with those limitations, there would be about 1,275,000 marker/labeler jobs and 325,500 inspector and hand packager jobs nationally. In reliance on this testimony, the ALJ determined that Plaintiff was not disabled because there were a significant number of jobs she could still perform despite her impairments.

One of the limitations the ALJ proposed to the vocational expert in the relevant question was that the hypothetical person could not "work in exposure to changes in barometric pressure." The ALJ's residual functional capacity finding correspondingly included a term that Plaintiff "should avoid work involving changes in barometric

---

the agency often seeks evidence from experts in such issues. That occurred here, as is discussed below.

pressure."[4] Here we have our first assignment of error. According to Plaintiff, this is a limitation for which the vocational expert could not have accounted. Therefore, she says, a finding based on that testimony is inadequately supported and must be rejected.

Plaintiff's contention relies on the assumption that the ALJ meant she needed to work in a special, pressure-controlled environment. But Plaintiff's interpretation is not reasonable and is contrary to the plain language of the limitation. As the SSA points out in its brief, atmospheric pressure fluctuation is a normal meteorological phenomenon that happens all the time as part of changing weather conditions; humans experience pressure changes simply as a consequence of being on Earth. The ALJ was not concerned with those normal, mostly unavoidable changes, and the ALJ's finding makes this quite clear: he found not that Plaintiff must avoid *all* changes in barometric pressure, but that she must "avoid work involving changes in barometric pressure." The limitation is plainly focused on pressure changes attendant to the work itself. Thus, the plain language of the limitation is inconsistent with Plaintiff's interpretation of it.

The jobs identified by the vocational expert do not appear to involve the sort of abnormal pressure changes with which the ALJ was concerned, and there is no evidence that the expert failed to properly consider the limitation in testifying. Therefore, it was not error for the ALJ to rely on the expert's testimony that a person with Plaintiff's residual functional capacity could still perform those jobs.

Now the court turns to the second assignment of error. SSA policy requires ALJs to ask vocational experts if their testimony is consistent with the Dictionary of Occupational

---

[4] Although the ALJ changed the wording slightly between the hypothetical question and the residual functional capacity finding, Plaintiff has not argued that the difference is significant.

Titles ("DOT")[5] and "elicit a reasonable explanation for" any apparent conflicts. SSR 00-4p, 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000). The ALJ asked that question here, and the vocational expert identified and gave reasonable explanations for two such conflicts. However, Plaintiff alleges that there is a third conflict, which went unidentified and unexplained. One of the jobs the expert said a person with Plaintiff's residual functional capacity could perform was that of marker/labeler. However, the DOT description of that job indicates that it requires the ability to handle items constantly,[6] and Plaintiff's residual functional capacity limits her to handling no more than frequently.

The SSA concedes that this is a conflict that should have been identified and explained, but argues that the lack of an explanation here does not warrant remand because the 325,500 inspector and hand packager jobs the vocational expert also identified remain untouched by this error. Because this is a significant number of jobs, it does not matter whether or not Plaintiff could be a marker/labeler—she did not qualify as disabled either way.

According to Plaintiff, though, the SSA's reasoning is foreclosed by *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). The appellant's argument in *Trimiar* was a direct attack on the SSA's finding that there were a significant number of jobs he could still perform. In addressing this issue, the court stated that it did not intend to "draw[] a bright line establishing the number of jobs necessary to constitute a 'significant

---

[5] The DOT is a Department of Labor publication that the SSA relies on for some information. *See* 20 C.F.R. § 404.1567 (2014).

[6] This information is technically in a companion volume to the DOT, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). However, practitioners generally think of and refer to the DOT and SCO as a single work. *See* SSR 00-4p, 65 Fed. Reg. at 75,759.

number.'" *Id.* at 1330. Instead, the *Trimiar* court looked only at whether the ALJ had considered the appropriate things in coming to his conclusion and whether that conclusion was supported by substantial evidence. *Id.*

*Trimiar* was not a case about harmless error. Nonetheless, Plaintiff argues that the *Trimiar* court's decision to leave the "significant number" question primarily to the agency's discretion prevents the Court from addressing whether the 325,500 inspector and hand packager jobs in this case are enough to make any error with regard to the marker/labeler jobs immaterial.

The case law developed in the intervening years has clearly adopted the SSA's position and rejected Plaintiff's.[7] The key case on this point is *Raymond v. Astrue*, 621 F.3d 1269 (10th Cir. 2009). In that case, the SSA identified three different jobs that the appellant was still capable of performing. The appellant argued that "the requirements of [two of those] jobs exceeded his physical abilities" per the ALJ's residual functional capacity finding. *Id.* at 1273. The circuit court then shifted into a harmless error analysis, explicitly stating that it would consider "whether or not [the lone remaining] job exist[ed] in significant enough numbers." *Id.* at 1274. Concluding that it did, the court affirmed the SSA's decision.

Since *Raymond*, numerous cases addressing an error with some but not all of the jobs identified by the SSA have continued to look directly at the number of remaining

---

[7] To Plaintiff's credit, there is least one Tenth Circuit case—*Segovia v. Astrue*, 226 F. App'x 801 (10th Cir. 2007)—that suggests her understanding of *Trimiar* and related cases is the right one. However, *Segovia* is unpublished, and its endorsement of the completely hands-off approach Plaintiff advocates is ultimately dicta because the court found there was no actual error in the underlying ALJ decision. And, of course, the position in *Segovia* is contradicted by a published case, which this order cites, decided since then.

jobs untouched by the error. *See, e.g.*, *Bainbridge v. Colvin*, 618 F. App'x 384, 391–92 (10th Cir. 2015); *Shockley v. Colvin*, 564 F. App'x 935, 940–41 (10th Cir. 2014); *Chrismon v. Colvin*, 531 F. App'x 893, 899–900 (10th Cir. 2013). Thus, by now it is well established that a court addressing a Step Five error can and should look directly at the number of jobs remaining after taking the error into consideration and determine whether there are enough jobs as to make any error harmless.

This is not to say that an error must eliminate every possible job identified by the SSA before a remand is warranted. There may be times where the number of remaining jobs is "small enough to put the issue in a gray area" where it is better for the SSA to address the question in the first instance. *Allen*, 357 F.3d at 1145. But wherever that gray area is, the Court can comfortably say that 325,500 remaining jobs (which is what we have here) is well outside of it. *See Shockley*, 564 F. App'x at 940 (finding 215,000 jobs to be a significant number); *Chrismon*, 531 F. App'x at 900 (212,000 jobs); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (152,000 jobs). No reasonable factfinder could have found that that many jobs in the national economy was not a significant number.

Thus, Plaintiff has not identified any material error in the SSA's decision. Accordingly, the Court hereby orders that the decision is **AFFIRMED**. The Clerk of Court is directed to close the case.

DATED this 17th day of May, 2016.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge